Good morning. May it please the court. I'm Alan Dickerson, appearing this morning on behalf of the appellants. As a general rule, the First Amendment doesn't permit governments to commandeer communications and to alter their content to bear the government's preferred message. But the courts have recognized a narrow exception to that principle in the context of paid electoral advertisements. And this appeal concerns the scope of that exception. San Francisco has taken the position that it has a near limitless informational interest that permits it to commandeer what the district court called a prominent portion of an advertisement and to force it to bear not only the identification of the speaker, not only the identification of donors to the speaker, but the identification of donors to those donors, even in cases like this where there's no connection between those donors and the communication on which they're being identified. The merits of this case are actually very interesting, but I've got a preliminary question. Why is this case not moved, given that the election issue has taken place? And I don't see anything in the record that shows that your client has indicated that it intends to participate in another election, so that this challenged ordinance would have any consequence for your client. I think that that's wrong, Your Honor. I think the complaint specifically states that both clients intend to participate in future elections. In what form do they intend to do that? In a substantially similar form in the context of ballot measures and this coming election in November. What election are they participating in? They plan to participate on the Yes on Prop J efforts in the city and county of San Francisco. Do we have any evidence that's cognizable in front of us that they've done so? And maybe you can tell me if there's something not in the record that would inform us as to whether they have done so. Well, I could point, Your Honor, to the judicial notice of filings with the state regulators that would note this. I don't know if that's become public yet. I do know it's been filed. But honestly, I'm not sure that that's required. Both Davis and Chula Vista considered it sufficient to simply state a reasonable possibility of future involvement. And that's both in the complaint and also in public statements that have been made by my client, and also by Mr. David, who routinely engages as treasurer of committees that are governed by this ordinance and consequently is personally subject to criminal penalties if the organizations he controls do not comply. Is he a political consultant? I think that's a reasonably fair statement, Your Honor. I don't know if that's his profession. I do know he does it on a regular basis in multiple committees, both including my client, and that he's also treasurer of another committee in San Francisco. I want to go back to the two cases that you just referenced, Davis and Chula Vista. In both of those cases, the statements that were made made clear that the intended future activity would trigger the regulations being challenged. In Davis, the person said, I'm going to do a self-funded campaign again. And that necessarily referenced the regulations at issue. Similarly, in Chula Vista, said, I'm going to be involved in these activities and undertake future communications like what I wanted to do in this case. Here, we don't have something that's specific. We have, I want to be active in a future election. And I'm struggling with what about that gives us a clear link to that activity is going to be related to the regulations at issue in this case. Because there's lots of ways to be active in elections that wouldn't trigger these regulations. And that's true, Your Honor. I think a few responses. One, that the complaint states, or at minimum, Mr. David has said publicly, and the Supreme Court in Davis considered this sufficient. But Mr. David has said publicly that he intends to participate in the November election through the Yes on Property Committee. Which means that any communications issued by Yes on Property would, as a relevant committee, be subject to this ordinance. So I think that that is certainly enough under Davis to hang the court's hat on. In terms of Chula Vista. Why do we have to assume that just because Prop B would be active in an election, that would mean it would want to do these kinds of publications that would trigger the regs? Well, I'm not sure how a political committee would be active in a campaign without engaging in communications. I think that's the cynical none of a political committee. If there are no expenditures or contributions, you don't have a political committee. So would you agree that there is a line at some point where a generic reference to an interest in political activity isn't going to be enough? Yes. I think there is certainly a line at which it would be too generic. I don't think that we're here given, not only Davis, but also said in Chula Vista, where a mere statement that an individual planned to be involved in future ballot measures was sufficient. That was the hook in Chula Vista that the En Blanc Court relied upon. I think that there is a line at some point. How would you articulate what the rule ought to be? Well, I think it depends on the remedy that's being requested. Here we're requesting facial invalidation, or I suppose at this point, a facial injunction. And that being the case, I would rely on Munson, which states that they're standing to raise issues even if one is not directly impacted as an as-applied matter. In an as-applied case, I would point the court back to the Wisconsin Rights and Life Opinion, where the Federal Election Commission took the position that you can't have the capable of repetition yet abating review standard unless you have a repetition of a legally relevant characteristics of the communications and the activity. And the Chief Justice's majority, excuse me, the controlling opinion, it wasn't majority, you know, that opinion squarely rejected that proffer by the Federal Election Commission. And I think we're in a very similar situation here, where we have a committee that has said it's going to engage in similar activity. We have an individual who said he's going to engage in activity through that committee, as well as through other committees. We have a record of what those communications will look like. And I would suggest, Your Honor, that that is well beyond the records that were submitted in Chula Vista, Davis, or Wisconsin Rights and Life. If there are no further questions on that, on the question of this court's jurisdiction, I think I'd like to begin by taking the case on which the city and county principally relies, which is Citizens United against the Federal Election Commission. And that case, they are correct, did explain that there is an informational interest in who is speaking to the electorate. I don't think there's really any difference of opinion on the existence of that interest. But there is a substantial difference of opinion on correct tailoring to that interest. And in Citizens United, the court was asked not to circumscribe an overly burdensome 28-second disclaimer, as this court is being asked to do. Instead, it was asking to speak entirely anonymously, not to put no disclaimer whatsoever, not to identify itself on the face of the communication. And what the court blessed was a three-part disclaimer that took a total of four seconds. It required a speaker to identify itself, which we are happy to do. It required contact information to that speaker. And in the context of political, of electoral speech involving candidates where there are campaign contributions and various other interests in play, that the speaker identify itself as independent of the candidate. Incidentally, that's also what was found by this court in both Gettman and Brumsicle, two other cases upon which San Francisco relies. What the court said was that that disclaimer, that specific disclaimer in federal law, was sufficiently close to the informational interest to survive scrutiny. And in fact, and I think this bears note, it said specifically that that four-second disclaimer, quote, ensured the voters are fully informed as the identity of the speaker. And if what we're talking about here is the interest of the government in identifying speakers on the face of communications so that voters can know who they are being, who is asking for their vote to take a formulation that is often used, the Citizens United disclaimer does that. And the Citizens United disclaimer is something that, as a constitutional matter and as a matter of the statutes that are actually in play here, my clients are happy to abide by. But there's no case that's been pointed to by San Francisco that takes even the first step of requiring primary donor disclosure on the face of the ad, let alone secondary donors that give to completely separate committees that, by definition, are engaged in other activities and other missions. Are you trying to persuade us that it is irrelevant to the decision of a voter who is contributing to the campaign? No, I'm not. I'm trying to convince the court. I'm having trouble understanding your argument. I think there's two responses. One, I'm not saying it's irrelevant. I'm saying it's not worth the squeeze. I'm saying that the marginal, the juice isn't worth the squeeze. The marginal benefit to the informational interest is not worth the marginal cost being imposed on speakers. Irrelevance isn't the standard. Relevance was rejected as a standard in the Riley opinion by the Supreme Court. It seems to me highly relevant who's contributing to the campaign and who are the primary contributors. Any ordinary voter who's paying attention wants to know, okay, who's paying for this ad? And then I can figure out, okay, why are they doing that, and then what's the likely consequence of this for the person paying for it? There are some legitimate concerns about dark money. There are, or at least that is what the voters believed when they passed Proposition 1. I have a couple responses. I mean, the first is the information. This isn't a dark money situation. Every dollar going to and from these organizations is already publicly disclosed. And, in fact, the city and county has done very little to explain the legitimacy of this law, which reaches only political committees, not organizations that don't have to disclose their donors. So this is already information that's public. So that, I think, would be my first response. My second is that the argument proves too much. Even if it's true that there is an interest in knowing the primary donors to an organization, and that, again, is something that California law requires, which is not at stake in this case. This is about donors to completely different organizations. And I don't think there's any indication that that is important to the voters. You can say that, but that strikes me as counterintuitive. Well, it's not the record that's in front of you, Your Honor. I mean, it's the city's burden under exacting scrutiny, which is the standard they wish for, to show that this marginal benefit, this marginal burden is worthwhile. They put two ads in the record, neither of which included any secondary donors. So it's not clear that they've established any legitimacy for the law. And importantly, we have an unrebutted expert statement in the record from a Ms. Margaret Murr saying that these disclaimers were overwhelming and dominating in most cases, and that they are so distracting as to render important campaign communications ineffective. We can speculate as much as we like. That's a different question, the degree to which it interferes with the transmission of the advertising message. And in fact, the ordinance has been cut back to some degree on that account. I'm not sure I agree, Your Honor. I think that the placement of what the Heller court called potentially extraneous information at the moment that voters see the message, particularly here where the city and county has explicitly privileged their efforts to contextualize advertisements by requiring these things to go first. I'm not aware of any precedent that finds that as a legal matter is important, and I'm not aware of any facts in the record that suggests as a practical matter it's important. And at this stage, I would submit that that's enough for a conjunction. And when we go back down for summary judgment and trial, if the city can build a better record, it is free to do so. I'd like to reserve some time for rebuttal, if possible, Your Honor. Why don't you do that? Let's hear from the other side, and then you have some time. Thank you very much, Your Honor. Good morning, Your Honors. Thank you. Good morning, Your Honors. May it please the court. This is Tara Steele from the city attorney's office for the city and county of San Francisco. San Francisco voters overwhelmingly approved Proposition F because they wanted more complete and more visible disclaimers that would allow them to follow the money and understand the forces behind the advertisements that are trying to influence their vote in the election. I'd like to start. I think counsel's arguments fail for three reasons. I'd like to start. Can you address the mootness question first? Sure, I'd be happy to. So, counsel relies on the capable repetition yet evading review requirement. And that requires appellant, and it is appellant's burden here. It requires appellant to show a reasonable expectation or some formulations, a demonstrated probability that the same parties will be subjected to the same requirements again. Here, we have no, we have nothing in the record and not even any argument showing that. The briefs say that the parties want to be active in the election, but that's simply not sufficient. So we just don't have any information. And appellant hasn't put forward any information that would satisfy the exception to mootness. I heard Mr. Dickerson say that we're talking about a committee, and this is what committees do. And so there's a reasonable inference that can be made there based on the facts. And also, Mr. David is not a newcomer to this activity. He has a track record of political activity. So why isn't that enough? It's not enough, Your Honor, because this is not the only thing that committees do. Committees donate money. They engage in rallies. They do many things to try to draw up support. They wouldn't necessarily run ads, especially ads that would necessarily trigger these requirements. We don't know what the donors are going to be. If counsel has said that they intend now to go forward supporting Proposition J, we don't know if those ads are going to trigger the secondary contributor requirement or even if they'll pose any unconstitutional burdens. So we just simply don't have the information that other cases have held sufficient to satisfy the capable repetition yet evading review requirement. Would it be appropriate for us to ask Mr. Dickerson to supplement the record with regard to mootness effects? Your Honor, I think counsel already had adequate opportunity to do so. We've been briefing this for a while. It's now before the court on oral argument. I think if there were information, I would have expected it to already have come to this court's attention. So I think counsel appellant already had the burden and they had an opportunity to satisfy it. I wanted to get back. I realize I forgot to answer your question about Mr. David. We again, we don't know what Mr. David's future involvement is going to be in elections or even I don't think we even have evidence in the record of back about his past activities. We know that he is the treasurer of the yes on property committee. But again, that that measure is already passed. So I just don't think we have the information that other cases have found sufficient to satisfy the requirement. So if I can turn then to the merits. So in terms of so the council's council's brief makes a number of arguments that I think are all precluded by Citizens United. One is that disclaimers are generally suspect that they can only be limited or sometimes in the brief. It argues that they're fundamentally inappropriate under the First Amendment because they appear on the ads themselves. Citizens United answers that question and it tells us that disclaimers are not inappropriate on those grounds. Citizens United also tells us that a disclaimer can take a substantial portion of the advertising space to be sure. Appellants have the right to communicate their message to the public. They need adequate space to do that. But the disclaimers that are still before this court do not take so much space on the advertisement that appellants cannot convey their message. How did the district court draw that line? Because obviously the district court enjoined certain certain application of this of these regulations and then allowed others to go forward. How did the district court actually come up with that line? Well, your Honor, so the records show that there were a number of advertisements that were very small ads where the disclaimer itself would take between 70 and 100 percent of the ad and the district court enjoined those. There's another segment of advertisements where the disclaimer would take between I think 17 and 30 percent. And in those cases, the court found, well, that the appellants still have two thirds of the ad space remaining. That's adequate to convey their message. The district court didn't feel it necessary. And I think this is appropriate to set forth a bright line that would always apply in every case. The district court simply looked at the facts before him and determined that where the ad space took the vast majority of the ad. It was unconstitutional as applied to those ads, but upheld the remainder of the regulation where it would not take so much space on the advertisement that appellants could not effectively convey their message to the public. If there are no further questions on those issues, I can turn to the secondary contributor. Did the district court himself or was that something that the city and county suggested to him? The city suggested the injunction that the district court ended up putting into place. The city said right away, we recognize that where a disclaimer takes the entirety of the ad or even the vast majority of the ad, that it's unconstitutional. And so the district court followed the city's suggestion in that respect. So do you disagree that plaintiffs are making a facial challenge? Well, I think the appellants have said that they are making a facial challenge, but the record that they put before the district court wasn't as applied record. They put in evidence only as to their own advertisements. They didn't show burden as to any other speaker in San Francisco. And so while they've said they're applying, they're seeking facial relief. They've only made the showing for an as applied challenge. And that's what the district court held it as well. So I maybe I'll turn now to the secondary what we call the secondary contributor requirement if there are no other questions. So the secondary contributor requirement, again, is meant to allow voters to be able to follow the money to understand the sources of funding behind the speech. And this is serving a very important governmental interest and one that's been recognized even as compelling, especially in this situation here where their voters are acting as the legislators. They are entitled to know essentially who's lobbying them for their votes. And the regulation furthers that interest. And I don't really hear any argument to the contrary, except that the voters may be confused. They may misunderstand what the regulations are and what the information provided to them means. But the Washington state Grange case tells us that we cannot make those assumptions about voter confusion. So if there are no further questions, I'd be happy to submit any further questions from the bench. OK, thank you very much, Mr. Dickerson. You saved a little time. Appreciate that, Your Honor. I think that there are two threshold problems with the city and county's position. First, they are really attempting to shift the burden. And it is the burden of the government to demonstrate the need for these additional marginal costs. And they haven't produced a record that does that. And I think it's also backward in the sense that, and this is maybe the flaw of the district court's opinion. The question isn't whether the government, by its grace, leaves sufficient space for a speaker to convey its message. The question is whether the government can accomplish its mission in a less burdensome way. That, at a minimum, is the holding of this court on board. Well, if you assume that it is an appropriate mission for the government to require the disclosure of these donors, including secondary donors, what's a more appropriate, less intrusive way? Do it not on the face of the ad, but through the sort of reporting that was approved by this court in Heller. And which was also approved, I might add, by the Supreme Court and Citizens United where it talked about the fact that there would be substantial information about the funders of ads because of the existence of these reports that exist online. And you think that's the equivalent in terms of effectiveness? I think it has to be. It has to be is not the question. It's a practical question. You're saying that information that's contained elsewhere, public knowledge but elsewhere, is just as effective as conveying the message and information on the face of the ad. That strikes me as unlikely. I'm saying it's effective enough that the government doesn't have the ability to do what it is doing here. And I think that that, again, is the fundamental legal principle that's at stake, is whether the government can bear that burden. And the fact something is relevant and interesting has never been found to be sufficient. Okay. I see my time has expired. Yeah. Any further questions from the bench? Okay. Thank both sides for their arguments in this case. The yes on Part B versus City and County of San Francisco now submitted for decision. That completes our argument calendar for this morning and we're in adjournment. Thank you very much. Thank you.
judges: Schroeder, W. Fletcher, Hunsaker